GEORGE A. HOAGLAND ET AL., APPELLANTS, V. SOPHIA LOWE ET AL., APPELLEES.

FILED FEBRUARY 20, 1894. No. 5181.

39   397
f40  581
a41  813
39   397
f42  719
39   397
44   821

1. **Mortgages**: MECHANICS' LIENS: PRIORITY: PRIVITY OF CONTRACT. Where a party sells real estate and takes a mortgage for part of the purchase price, and postpones the lien of the mortgage to that of another mortgage given to obtain a loan, at the request of the purchaser, in consideration of his promise to use the money derived from the loan in making improvements on the premises, such promise being included and expressed in the purchase-money mortgage, *held*, that this did not constitute the mortgagor the agent of the mortgagee in making the contract for the erection of the building; that there was no privity of contract between the mortgagee and the laborers on, or furnishers of material for, the building; and that mortgagee was not a promoter of the building scheme, or operations; and that the mortgage lien would not be subordinated to the liens for labor done and material furnished,—the commencement of such labor and furnishing material being subsequent to the recording of the mortgage.

2. **Mechanics' Liens:** INTEREST TO WHICH LIEN ATTACHES. "A person commencing to furnish material for, or commencing to labor on, an improvement on real estate must, at the time, take notice of the interest and title in the premises of the person with whom he contracted, as shown by the public records, as his lien for labor or material, aside from the improvement itself, attaches only to such interest." (*Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207.) .

3. ———: MORTGAGES: PRIORITY. Where a party receiving a mortgage for a part of the purchase price of real estate takes it subject to a mortgage given for a loan, the consideration for' making the mortgage subject to the loan mortgage being the promise on the part of the mortgagor to use the loan so obtained for putting improvements on the premises, and the mortgagor pays the mortgagee a portion of the loan money on the purchase price as a cash payment, it being shown that the mortgagee had no knowledge that this was done, the mere fact of receiving such money will not entitle the mechanics' lien-holders who commenced to perform work and furnish material for the buildings erected on the premises subsequent to the time of recording the purchase-money mortgage, in a suit for foreclosure of the mortgage and the liens, to a decree giving the liens priority over the mortgage, or to have the said mortgage lien postponed or made subordinate to the mechanics' liens in the amount of the sum so paid to the mortgagee.

4. ———: ———: ———. Where a party, purchaser of real estate, gives a mortgage to the vendor of such real estate to secure the balance of purchase price unpaid, and such mortgagee, in consideration of improvements being made and buildings erected on said real estate, allows said mortgage to become subsequent in priority to mortgages made to secure a loan for the purpose of erecting such improvements, said mortgage thereby made subsequent containing a clause whereby the mortgagor agrees to use all money procured by such loan mortgages in the erection of such buildings, and fails to do so, *held*, that the lien of the mortgage of said vendor should not be subordinated to the liens of the mechanics and material-men who commenced to perform labor and furnish material subsequent to the recording of said mortgage.

5. ———: ———: ———. A mortgage on real property in this state does not convey any title or vest any estate either before or after conditions broken, but merely creates a lien upon the mortgaged property; and the mortgagee's interest in the property mortgaged is not such an interest as constitutes him an owner within

the meaning of the mechanics' lien law, and as a general rule his mortgage lien will not be subordinated to mechanics' liens predicated upon claims for labor and material, the performance and furnishing of which were commenced on a date subsequent to the record of the mortgage, pursuant to a contract with the mortgagor.

APPEAL from the district court of Douglas county. Heard below before DOANE, J.

*Switzler & McIntosh* and *A. C. Read*, for appellants.

*Chas. E. Clapp, J. B. Meikle, Mahoney, Minahan & Smyth, Smith & Powell, Cornish & Robertson*, and *Cavanagh & Thomas, contra.*

HARRISON, J.

In this case the plaintiff filed a petition in the district court of Douglas county, Nebraska, praying the foreclosure of a mortgage on "lot No. fourteen (14), block three (3) of Summit Place, an addition to the city of Omaha, as surveyed, platted, and recorded, said lot being sixty-eight (68) feet front on Farnam street and one hundred thirty-two (132) feet on Thirty-first street, together with all the appurtenances thereunto belonging, in the sum of $4,761.27," alleging that the same was given for a portion of the purchase price of the premises mortgaged. The mortgage contained the following statement in regard to its being given to secure a part of the purchase money: "This mortgage being given to secure a portion of the purchase money of said premises." The mortgage also contained the following statement in reference to incumbrances, and the use of the money derived from the prior mortgages to pay for improvements, thereafter to be placed upon the lots: "That they are free from incumbrance except as follows, to-wit: One mortgage on the west half of said lot for $4,000, payable five years after date and bearing interest at seven per cent per annum; one other mortgage of $200 on said west

half of said lot, payable one year from the 25th day of July, 1889; one mortgage on the east half of said lot for $3,500, payable in five years from date and bearing interest at seven per cent per annum; and one other mortgage for $175 on said east half of said lot, payable one year from the 25th day of July, 1889; all of said mortgages being from said Riley to Eugene C. Bates; said mortgages of $4,000 and $3,500 being given to procure a loan for the purpose of making improvements on said premises; and I further covenant, in consideration of this mortgage being made subject to said mortgages above described, that I will use the whole of the proceeds of said mortgages in the making of such improvements on said premises."

Of the defendants, E. Lillian Goodman filed an answer and cross-petition, asking the foreclosure of a mortgage on the "east half of lot fourteen (14), in block three (3), in Summit Place, an addition to Omaha, Nebraska, as surveyed, platted, and recorded, being a part of the southeast quarter of the northwest quarter of section twenty-one (21), in township fifteen (15), range thirteen (13) east, of the sixth principal meridian, with all the appurtenances thereto belonging," being a part of the same property covered by the Lowe mortgage. The Goodman mortgage was in the sum of $3,500, and was one of the mortgages described in the Lowe mortgage and to which it was made subject. (See statement herein copied from Lowe mortgage, referring to this mortgage and its priority.) Eliza Marvin, guardian, filed a cross-petition, alleging ownership of the $4,000 mortgage to which that of plaintiff was made subject, covering a portion of the property included in the Lowe mortgage, "the west half of lot fourteen (14), in block three (3), in Summit Place, an addition to Omaha, Nebraska, as surveyed, platted, and recorded, being a part of the southeast quarter of the northwest quarter of section twenty-one (21), in township fifteen (15), range thirteen (13) east, of the sixth principal meridian, with all the appurtenances thereto

belonging." The prayer of each of these cross-petitions was for foreclosure of the mortgage described in such petition. Chas. C. Bates also filed answers and cross-petitions asking for foreclosure of his mortgages on the same premises, they being given for his commission for making the loan evidenced by the Marvin and Goodman mortgages, one being for the sum of $200, and one in the amount of $175. Except Meyer & Raapke, all the other answering defendants filed answers in the nature of cross-petitions, alleging the performance of labor or furnishing of material, or both, in and for the erection of two houses on the premises in controversy, one house being placed on the portion of the lot described in the Goodman mortgage and one on the part covered by the Marvin mortgage.

The several answers of the mechanics' lien holders prayed for the foreclosure of the mechanics' liens, and that they might be declared prior to the mortgages of Goodman and Bates, Marvin and plaintiff. Meyer & Raapke filed an answer alleging the ownership of a judgment against the principal defendant, John Riley, and praying that the judgment be established as a lien against the premises in controversy, etc., but on the trial discovered that the defendant Riley in this case was not the one against whom they had judgment and offered no proof.

John Riley, the principal defendant, did not answer and was defaulted. A trial was had and proof offered of the various mortgages and mechanics' liens and evidence introduced bearing upon the question of the priority of the several liens of the mortgages and mechanics' liens, and a decree rendered ordering the sale of the property to satisfy the liens and establishing their priority, as follows:

"The court further finds that the order of priority of the several mortgages and liens as above described is as follows:

"First—That the mortgage of defendant E. Lillian Goodman is the first lien upon the east one-half of said lot,

30

and the mortgage of David M. Marvin, testamentary guardian of Walter T. Marvin, a minor, is the first lien upon the west one-half of said lot.

"Second—The two mortgages of the defendant Charles C. Bates are the second lien on the said premises.

"Third—The mortgage of the plaintiff is the third lien upon said premises.

"Fourth—The mechanics' liens of the defendants Nell Seiroe, Balfe & Reed, George A. Hoagland, Freeman J. Ham, the Omaha Coal, Coke & Lime Company, and Mc-Bryan & Carter are fourth in the order of priority, and are equal to each other in the point of priority and shall share *pro rata*."

The case comes here on appeal by the several parties defendant who sought foreclosure of the mechanics' liens, their complaint being against that portion of the decree in which they are postponed in priority to the mortgages in suit, and more particularly that of Sophia Lowe. There is no claim made that the mortgages are not prior in point of time to the commencement of any labor or furnishing of material for the houses, either in the execution or recording.

The mortgages of Goodman, Marvin, and Bates were executed July 25, 1889, and recorded July 29, 1889. The mortgage to plaintiff was executed July 27, 1889, and recorded July 30, 1889, and no labor was performed on the houses or material furnished for them until the month of August 1889. Nor do the mechanics' lien holders claim that they did not know of the existence of the mortgages, or that they were not informed as to their recitals and contents, but the contention is made that, inasmuch as the plaintiff waived her right of priority and allowed her purchase-money mortgage to be postponed to the Marvin, Goodman, and Bates mortgages, under the statement in her mortgage that it was done in order that money might be obtained through the medium of the loans secured by the Good-

man and Marvin mortgages for the purpose of improving
the property and building the houses, the mortgagor agree-
ing to use such money for that specific purpose and none
other, and, furthermore, since Sophia Lowe was paid $4,500
of the funds thus obtained as a part of the purchase price of
the property, the liens of the mechanics and material-
men should be given priority to her mortgage and receive
prior satisfaction from the proceeds of the sale of the
premises.    The further claim is made in regard to the
Lowe mortgage, by the mechanics' lien holders, that it and
the deed from Sophia Lowe to John Riley were executed
in conformity with a verbal negotiation or contract of pur-
chase and sale of the premises in controversy, and that the
agreement of the purchaser to improve the premises was a
constituent part of such contract of sale.    That the Mar-
vin, Goodman, and Bates mortgages should be held subse-
quent to the liens of the mechanics and parties furnishing
material, for the reason that when the loans were made it
was with the agreement that such funds were to be used
for the improvement of the property and to build these
houses, all parties to the loans entering into such agreement
and having full knowledge of it.    There is not much
direct evidence respecting these points, and what there is
does not, to any great extent, tend to sustain the allegations
or positions of appellants, rather to contradict them; and
it is only when we look to the face of the Lowe mortgage
and what is therein stated in reference to improvements,
coupled with the circumstances surrounding the whole
transaction, that we can say that the evidence in the case
tends to support their view of the situation and rights of
the parties.

The following facts are established by the evidence:
That the sale from Sophia Lowe to Riley was effected be-
tween Riley and one Fred Lowe, who acted for Sophia
Lowe; that the agreement between them was that the
mortgage which was to be taken by plaintiff (the one sought

to be foreclosed in this case) should be subject to the Good-
man, Marvin, and Bates mortgages, the consideration mov-
ing to plaintiff for so subordinating the lien of her mort-
gage being the promise of Riley to improve the property
and to use for such improvement the money derived from
the loans secured by said mortgages. This agreement on
the part of Riley was embodied in the mortgage to plaint-
iff. (See copy hereinbefore set forth.) We are satisfied, from
a careful examination of the evidence, that the contract for
the improvement of the property on the part of Riley did
not enter into the original agreement of sale between Riley
and Fred Lowe, agent for Sophia Lowe, but was first
talked of and agreed upon when the proposition was made
by Riley to Fred Lowe that the mortgage to Sophia Lowe
should be postponed, as a lien upon the premises, to the
liens of the mortgages to Bates, now the Marvin, Goodman,
and Bates mortgages. The evidence further discloses that
Bates, in making the loan, relied upon the security of the
property mortgaged, but understood, and was probably ver-
bally promised by Riley, that improvements would be made
upon the property; that Bates never knew any more about
it and paid no further attention to it, relying upon the lot
alone as security. · The testimony further discloses that the
money derived from these loans was paid to Riley, $4,500
immediately upon the execution of the mortgages and the
balance as he asked for it. That the loan of $7,500 was
divided and made upon different portions of the premises,
for the reason that Bates, or the company for which he was
agent, did not have money enough belonging to any one
party to fill the whole loan. The evidence further shows
that the $4,500 paid by Bates to Riley July 29, 1889, was
by Riley paid to Fred Lowe for Sophia Lowe as a part of
the purchase price of the property without any knowledge
on the part of Fred Lowe or Sophia Lowe, who it appears
was never here and had no knowledge of the transaction
except that gained by her mortgage, etc., that the $4,500

was part of the funds coming from the loan of Bates to Riley and covered by the Marvin and Goodman mortgages. It also appears from the evidence that the plaintiff never in any manner, either herself or through her agent, directed, supervised, or knew anything of the payment of the loan money by Bates to Riley, the building contracts, or furnishing of material, or performance of labor, or any matter concerning the improvements. There is no evidence that the various persons furnishing material or performing labor, or any of them, ever examined the records before so doing, or knew of the agreement contained in the Lowe mortgage, or that they, or any of them, relied upon it in any degree or attempted to ascertain from what source the money to pay for the buildings was to be derived, other than from Riley, the apparent owner of the lot and the one with whom the contract for building was made. We have before stated that we were satisfied from the evidence that neither the plaintiff nor her agent, Fred Lowe, had any knowledge of where Riley obtained the $4,500 with which he made the first payment of the purchase price of the lot. It must be further borne in mind that this payment was made July 29, 1889, several days prior to the time when any labor was performed on the buildings, or any material furnished, or any other rights had intervened or attached, at a time when Mrs. Lowe and Mr. Riley, being the only parties interested, could have changed the agreement to build to any extent, or wholly set it aside if so disposed, and no person has a right to complain. If it had been shown that the Lowes, or either of them, knew that the $4,500 paid July 29, 1889, was a portion of the loan funds which by agreement was to be applied in payment for buildings or improvements, then the case would have appeared in a different light; but as it is, without any such knowledge on their part, we are satisfied that the mere facts that they received the money, and that it was received by Riley from the amount of the

loans, are not sufficient to bind Mrs. Lowe to pay all or any of such amount on the liens for labor and material performed and furnished subsequent in their date of commencement to the filing and recording of the mortgage to her.

Section 1, article 1, chapter 54, Compiled Statutes, 1893, entitled "Mechanics' and Laborers' Liens," provides as follows: "Any person who shall perform any labor, or furnish any material or machinery or fixtures for the erection, reparation, or removal of any house, mill, manufactory, or building or appurtenance, by virtue of a contract or agreement, expressed or implied, with the owner thereof or his agents, shall have a lien to secure the payment of the same upon such house, mill, manufactory, or building or appurtenance, and the lot of land upon which the same shall stand." It will be noticed that two of the necessary elements entering into a claim for a lien for the performance of labor or furnishing of material by virtue of this section are a contract, expressed or implied, and this with the owner of the property to be affected by the lien. It is not controverted in the case at bar that the parties declaring upon mechanics' liens had furnished material or performed labor in the improvement of the premises sought to be subjected to the liens in this case, and it is admitted that the contracts for such labor and furnishing of material were made with John Riley, the owner of the premises. There is some testimony to the effect that the property was bought by his brother, Bernard Riley, and for some purpose was deeded to John. With this we have nothing to do here, and will hereafter refer to Riley, or John Riley, to whom the deed on its face was made, as the owner. The mortgagees in this case were not in any sense owners of the premises upon which the buildings were erected. They derived no title to the property by the mortgages and no other or further right than if any default was made in their conditions, to subject the property by legal procedure to the payment of

the debts secured thereby. In this state a mortgage of real estate merely creates a lien thereon as security for the debt, but conveys no title or vests no estate either before or after condition broken. (*Hurley v. Estes*, 6 Neb., 386; *Davidson v. Cox*, 11 Neb., 250; *McHugh v. Smiley*, 17 Neb., 626.) There is no contention made that the Goodman, Marvin, and Bates mortgages were given for any other consideration than the money loaned and a possible verbal understanding at the time of the loaning, between Riley, the owner of the property, and the loan agent, Bates, that Mr. Riley intended erecting buildings upon the lot at some time in the future. We have before stated that we are satisfied that the agreement of Riley to build did not enter into the contract of sale between Mrs. Lowe, or Fred Lowe, her agent, and Mr. Riley. The law of our state says that they took no title to the real estate by their mortgages, nothing but liens on the lot for the security of the debts, and we are left with the question, whether an agreement by the mortgagor of the premises with the mortgagee that he will improve or erect buildings, either verbally made or included in the mortgage as one of the conditions or covenants thereof, will subordinate or postpone the lien of the mortgage to a mechanic's lien for labor or material commenced to. be performed or furnished after the mortgage is recorded.

In Phillips, Mechanics' Liens [2d ed.], sec. 225, p. 378, the general principle governing contests for priority between lien-holders and mortgagees is stated as follows: " The governing principle upon which the adjudications in contests for priority have been based is, that vested rights of purchasers or incumbrancers, and, reciprocally, the liens of mechanics, are not affected or displaced, when once attached, by other rights subsequently accruing. The priorities of each are jealously protected from hostile interference. The law imposes on mechanics, like other persons, the necessity to ascertain for themselves the nature of the interest in

the land to be improved of the persons with whom they contract, and all negligence in this regard is charged to their own account." In section 232 it is further stated: "The rule of *caveat emptor* therefore applies against a mechanic as well as in the case of a vendee. If a contractor proposes erecting buildings, furnishing materials, or putting labor on a lot of ground, it behooves him to examine and assure himself of the fact that the person with whom he contemplates making a contract, or for whose benefit he is about to employ his means or labor, has such an interest or title unincumbered as will enable him to avail himself of a valid or efficient lien."

In the case of *Hill v. Aldrich*, 50 N. W. Rep. [Minn.], 1020, a case in which the owner of a lot sold it on time with the understanding that the party purchasing was to build a house on the lot, the vendor to lend her $1,000, it was held "that the vendor's mortgage was *bona fide* and prior to any lien on the premises for material furnished to the vendee for the construction of the building;" and in the body of the opinion, Mitchell, J., in passing upon the case, says: "There is no ground for imputing to the phrase '*bona fide*,' as used in this statute, any other than its usual and established meaning. Huntington certainly paid a full and valuable consideration for the mortgage. The arrangement between him and Mrs. Aldrich was one they had a right to make, and violated no rule of law or good morals. Mrs. Aldrich had a right to buy a lot on time and borrow money with which to improve it, and Huntington had an equal right to sell the lot on time and also lend the purchaser the money with which to improve it. That the building would enhance the value of the mortgage security, and that this fact was the inducement for Huntington's selling on time and lending part of the money with which to construct the building, certainly cannot affect the good faith of the transaction, as no one could have been misled or deceived by it. The deed and mortgage were

both on record, and had plaintiffs examined the records before furnishing the material, they would have disclosed the exact amount of incumbrance on the property. If they trusted Mrs. Aldrich without examining the records, it was their own negligence, for the consequences of which the law furnishes no relief. If they did examine, then they found Huntington's lien for $3,000 on the property; and if they then made no inquiry of Huntington, they trusted Mrs. Aldrich with an apparent lien of $3,000 ahead of them; and if they did inquire of him, then they learned that Mrs. Aldrich had $1,000, and no more, in his hands to use building the house. In any view of the case they could not have been misled, and have no show of equity to demand that their lien shall be preferred."

In *Morony's Appeal*, cited in brief for appellee Sophia Lowe, 24 Pa. St., 372, the syllabus is as follows: "A mortgage given with a bond, and in common form and immediately recorded, and intended to secure the payment of a sum of money which the mortgagee then contracted to loan to the mortgagor for the purpose of enabling him to erect houses on the mortgaged property, and which was to be advanced in proportion to the progress of the work, is valid, though the contract of loan be not referred to in the mortgage, nor recorded; and it ranks as a lien for the amount loaned, from the date of its record and not from the date of the actual advances; and this is so though the mortgagor contracted to apply the money to the payment of the builders, and had, in part, failed to do so, and they had entered their liens;" and in the opinion it is stated: "If the owners of these liens trusted Montgomery without examining the state of the records, the law provides no relief from the consequences of their negligence, and morality does not demand that it shall and even charity will not allow it at the expense of more careful men. If they did examine the records, then they found the lien of Cadwalader standing good against Montgomery, and honesty forbids

them to cut it out for their profit. If they found it and still trusted Montgomery without inquiry, then they agreed to trust him even with a lien against him of $12,000, and with no apparent means to pay them. If they made inquiries, then they learned that he would have $12,000 in hands to pay for the improvements he was making and they trusted him that he would appropriate it properly. In no way that we can regard this case can we perceive that the appellants have any show of equity to demand that their claims shall be preferred to the mortgages."

Since the commencement of this action this court has decided the case of *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207, in which decision it was held that where one furnishes money to build a house, for which he took a mortgage upon the premises whereon the erection was to be made, the record of such mortgage gave it priority to the rights of material-men and mechanics who began to confer value upon the mortgaged property after the record of the mortgage; and this was a case where the agreement was with the mortgagee to build on the lots mortgaged, and the money, the proceeds of the loan, to be held by the mortgagee and paid out only upon the presentation to it of receipted bills for labor and material,—a much stronger case for and in favor of allowing the claims of liens prior to the mortgage lien than is the one at bar as between the Bates and Goodman, Marvin and Lowe mortgages, and the mechanics' liens. (See also *Platt v. Griffith*, 27 N. J. Eq., 207; *Choteau v. Thompson*, 2 O. St., 114; *Martsolf v. Barnwell*, 15 Kan., 612; *Wisconsin Planing Mill Co. v. Schuda*, 39 N. W. Rep. [Wis.], 558; *Crowell v. Gilmore*, 18 Cal., 370; *Mechanics Mill & Lumber Co. v. Denny Hotel Co.*, 32 Pac. Rep. [Wash.], 1073.) We believe the correct rule to be that the record of a *bona fide* mortgage entitles it to priority as a lien over the liens of mechanics and material-men, who, after the recording of the mortgage, commenced to labor upon or furnish material

for improvements made on the premises covered by the mortgage.   Measuring the rights of the parties in this case by the above rule, the mortgages are placed in priority to the mechanics' liens, and in view of the conditions and relations existing between the parties, as shown by the testimony, this does not seem inequitable, nor do we think it is a departure from the just and wholesome rule which requires us to give to the provisions of the mechanics' lien law a liberal construction.

We do not believe there has been anything shown which could require that the liens of the Goodman, Marvin, and Bates mortgages should be postponed to those of the mechanics' lien holders; and as to Mrs. Lowe, Mr. Riley's contract with her, set forth in her mortgage and.of record, plainly evidenced that she would have no control of the money to be obtained from the loans, or its appropriation; that she wholly relied upon him to fulfill his promise in regard to improvements and to use the loan funds in paying for them, and if he failed to do so, then she to be left with any remedy the law would afford her.   The evidence does not show that any of the parties claiming liens for labor or material ever examined the records or made any investigation to ascertain the condition of the title, whether incumbered or not, or that there were any inquiries made; and the conclusion must be that they relied upon Riley as owner of the property and whatever lien they might be able to acquire and hold as against the premises; or if they in fact did examine the records (which the evidence does not disclose), they discovered that the plaintiff was relying solely upon the honesty and promise of Riley to apply the money loaned in the manner and to the purpose agreed upon, and in furnishing material and performing labor they placed reliance in the same condition of affairs and must be held bound by such action.

The counsel for appellants, the lien-holders, cite the case of *Bohn Mfg. Co v. Kountze*, 30 Neb., 719, and *Millsap v.*

*Ball*, 30 Neb., 728, decided the same day, and strenuously contend that the doctrine then announced is applicable to and decisive of the case at bar. In the *Bohn Mfg. Co.* case, Kountze, the vendor, under a contract of sale, and holding the legal title, not only authorized but required the vendee to build a house upon the premises within a certain time and of a fixed value, and further agreed to advance money to pay for the building, but retained control of the funds, and no payments were made without his approval, and the money being placed in a bank, none was paid out unless he countersigned the checks. A careful and true examination and analysis of the case and of the cases therein cited will, we think, lead to the conclusion that it was held (quoting the language of the now Chief Justice Norval in the body of the opinion): "The correct rule doubtless is, where one holding land under a contract of purchase causes a building to be erected thereon, and the contract of sale contains no provision for the erection of a building, that the mechanic's lien is confined to the interest of the purchaser in the premises, and is subordinate to that of the vendor of the land for unpaid purchase money;" but, "where a vendee, owning the equitable title, contracts for the erection of a building upon the express authority of the owner of the legal title, it is but just that the lien of the mechanic should attach to the interest of both vendor and vendee in the premises, and be paramount to the lien of the vendor." The opinion in *Millsap v. Ball* was also written by Judge Norval, and the main question raised was the same as in *Bohn Mfg. Co. v. Kountze*, and the decision in the last mentioned case was followed. We understand the rule announced in the above cases to be, that where a vendor of real estate, holding or owning the legal title, authorizes or requires the vendee to erect improvements upon the premises, the subject of the contract of sale between them, the lien of laborers or material-men, who perform labor or furnish material for the

improvements, will attach to the interest of both vendor and vendee and be prior to the lien of vendor for unpaid purchase money, and that the rule is general and applicable to any case coming within its terms. This is unquestionably the correct doctrine, just and right, but clearly can have no force in, and will not govern, the adjustment of the interests and claims of parties in the present case, where the agreement to build was not included in the original contract of sale and purchase, where the contract of sale and purchase has resulted in a deed from the vendor to the vendee and a mortgage back by vendee to secure payment of a part of the purchase money, whereby the vendor became a mortgagee, not the owner and holder of the legal title or of any title or estate, but possessed of a mere lien or security for the payment of the debt, no right or title in the premises upon which, under our statutes, a lien can be predicated. The case at bar is entirely without the rules established in the above cases.

We think the facts as developed in this case entitle the plaintiff's mortgage lien to the position which she agreed it should take, and that the appellants have selected, by their own choice, their place in the list of liens and must keep it. We conclude the decree of the lower court was right and answered the demands of justice and equity in the case and it is

AFFIRMED.