PATRICK LAND COMPANY OF OMAHA V. EDWIN A. LEAVENWORTH ET AL.

FILED NOVEMBER 9, 1894.   No. 4580.

1. **Mortgages: MECHANICS' LIENS: PRIORITIES.** *Hoagland v. Lowe*, 39 Neb., 397, followed and reaffirmed.

2. **Mechanics' Liens.** Where the vendor of land took by agreement a second mortgage to secure the unpaid portion of the purchase money and the cash payment was made from a loan secured by the mortgage which was made superior to the purchase money mortgage, with the knowledge of all parties but without previous agreement, it being the understanding that the

loan was being made for the purpose of erecting improvements on the premises and the owner contracting to erect such improvements, but there being no contract that the money obtained by the loan should be so used, and the loan company not undertaking to see to the application of the money, *held*, that by virtue of these facts the priority of the mortgages as against mechanics' liens for work begun and material furnished after the recording of the mortgages was not disturbed.

3. ———: ESTOPPEL. The loan company was not by estoppel or otherwise prevented from asserting the superiority of its mortgage as to the whole amount thereof because of the foregoing facts, or of the further fact that a mechanic, induced by representations of the owner, relied on payment out of the loan, a part of which was in fact appropriated to another purpose, it not appearing that the loan company had itself by contract or by conduct led the mechanic to rely upon its seeing to the application of the money.

4. Orders: ACTIONS. An action cannot be maintained by the payee against the drawee of an order upon a fund payable to the drawer where the drawee has refused to accept the order.

5. Judgments: PLEADING: CROSS-PETITION FILED AFTER ANSWER DAY: NOTICE TO CO-DEFENDANTS. One of several defendants demurred to a petition. The demurrer was sustained. His co-defendants, after answer day, filed cross-petitions seeking affirmative relief against him. No summons or notice was served upon him of the cross-petitions and he did not appear thereto. *Held*, That the court properly refused judgment against him on the cross-petitions. *Arnold v. Badger Lumber Co.*, 36 Neb., 841, followed.

ERROR from the district court of Douglas county. Tried below before WAKELEY, J.

Appearances of counsel were withdrawn.

IRVINE, C.

William Allen began this action to foreclose a mortgage made by the defendants George W. McIntire and wife to the Patrick Land Company, conveying lot 9, block 110, Dundee Place, an addition to the city of Omaha, and securing notes amounting to $1,000. This mortgage was

dated August 1, 1889, and was recorded August 15, 1889, at 4:30 P. M. It was alleged that Allen had become the owner of the notes secured by the mortgage. During the pendency of the action, the Patrick Land Company having become repossessed of the notes, was substituted for Allen as plaintiff. The Kimball-Champ Investment Company filed an answer setting up a mortgage on the property, dated August 1, 1889, and recorded August 13, 1889. The Kimball-Champ Investment Company asked to have this mortgage declared a first lien but did not seek a foreclosure. A. D. Paddock, by answer, set up a mortgage from McIntire and wife to the defendant Partridge and transferred to Paddock, and claimed that said mortgage was superior to all liens except that of the Kimball-Champ Investment Company. Partridge, Wahlstrom & Berglund and the Hussey & Day Company claimed mechanics' liens for work done and material furnished for erecting a building on the property after the mortgages were recorded. The decree of the district court established the investment company's mortgage as a first lien, the Paddock mortgage as a second, the Patrick Land Company's as a third, and the mechanics' liens as inferior to the three mortgages. From this decree the mechanics' lienors appeal, claiming that the court erred in subjecting their liens to the mortgages, and the Hussey & Day Company and Wahlstrom & Berglund also claim a right to a personal judgment against the defendant Leavenworth, which was denied by the district court. We shall first consider the question of priorities.

The pleadings and evidence disclose the following state of facts: An arrangement was made by the Patrick Land Company to sell the lot in question, together with nineteen others, to McIntire, Leavenworth in all things claiming to represent McIntire. Their true relations will be referred to on the other branch of the appeal. McIntire was to pay $5,000 in cash and give to the Patrick Land Company

notes and mortgages to secure the remainder of the pur-
chase money. The mortgages to the land company it was
agreed should be subject to a mortgage to be secured for
the purpose of obtaining funds for building. Leavenworth
made arrangements with Kimball, Champ & Ryan, acting
as loan brokers, for a loan of $44,000, to be secured by
mortgages of $2,200 upon each of the twenty lots. This
loan having been negotiated from the investment company
and all the instruments ready for delivery the secretary of
the land company accompanied Leavenworth to the office
of Kimball, Champ & Ryan, where Mr. Ryan paid $5,000
directly to the secretary of the land company, who then
delivered to him the deeds for the lots. Delivery was then
made of the other instruments. There is no evidence that
there was any prearrangement between the land company
and any one else that the $5,000 should be paid from this
source. Indeed, the evidence is positive that the land com-
pany did not know in advance of the payment where the
money was coming from. There can be no doubt, however,
that when the transaction occurred the secretary did know
that the $5,000 was a portion of the loan which was to be
secured by the mortgage prior to the land company's. The
mortgage to the investment company did not specify the
purpose for which the loan was made. McIntire did,
however, contemporaneously with the loan, contract with
the investment company to erect within ninety days a two-
story dwelling on each of the lots, the contract reciting that
the lots were insufficient security for the loan and that the
contract was made for the purpose of fully securing the
investment company. In this contract it was agreed that
the investment company should pay to McIntire the amount
of his loan in two payments, one-half when the buildings
were roofed, the other one-half upon their completion, re-
serving sufficient to protect the investment company from
liens. As a matter of fact the investment company seems
to have paid out a large portion of the loan on orders given

by Leavenworth to the various contractors, but there is nothing in the contracts of the investment company either requiring or empowering it to see that the loan was applied for the purpose of building.   On this state of facts the appellants claim priority both as to the investment company and to the land company, urging the same arguments advanced by the appellants in the case of *Hoagland v. Lowe,* 39 Neb., 397.   The facts of the two cases are so similar that every question presented in *Hoagland v. Lowe* is prop- erly presented by this record.   So far as the questions involved in the former case are concerned we shall not restate them or discuss them anew.   Suffice it to say that the rules announced in that case are here adhered to.   We can discover but two points on which differences could be suggested in the two cases.   The first is that while in *Hoagland v. Lowe* Mrs. Lowe had no knowledge that the payment upon the lots made to her came out of the loan, there is no doubt that in this case the Patrick Land Company, although without a previous arrangement to that effect, did know when it received the payment that it was a portion of the loan.   The second point of difference is that in *Hoagland v. Lowe* reliance was placed by the lender upon the lot alone as security.   There was nothing more than a verbal promise to build.   In this case there can be no doubt that the land company and the investment company both had contracts with McIntire requiring that houses should be built, and it was understood that the loan by the investment company was negotiated for the purpose of building, but there was no contract between any parties requiring the money to be so used.   Do these distinctions render inapplicable the rule of priorities in *Hoagland v. Lowe?*   We think not.   The mere knowledge of the parties that the owner had in view the obtaining of funds to build when he negotiated the loan did not impose upon them the duty of seeing that the loan was applied to that purpose; nor did either mortgagee ever undertake any such duty.   There

was no appropriation of the fund for that purpose by the
contract, and if the mechanics obtained any right to have
the fund distributed for that purpose it must have been by
facts constituting an estoppel. It is very probable that if
the investment company had led the mechanics to rely
upon its seeing to the application of the loan for the pur-
pose of their payment, and if the mechanics so relying had
entered into their contracts or performed work thereunder
and then the investment company had disbursed a portion
of the loan for other purposes, it might be estopped from
setting up its mortgage as against the mechanics to the ex-
tent of the funds so misappropriated. But such are not
the facts of this case. It does not appear that either the
Hussey & Day Company or Wahlstrom & Berglund, in
making their contracts or doing their work, placed any re-
liance upon the fact that the loan had been secured. On
the contrary, it does appear, as will be hereafter stated,
that they advanced credit in reliance on other facts, or sup-
posed facts. It does not appear that they even had any
knowledge of the loan when their contracts were made or
their work begun. Partridge did know of the loan, and
undoubtedly did contract relying on being paid therefrom,
but such reliance was due entirely to the statements of
Leavenworth. The investment company by no act of its
led him to rely upon the fund for his pay. It is true that
he received from the investment company a portion of his
compensation out of this fund and on orders from Leaven-
worth; but he had no dealings with the investment com-
pany until after he had made his contract and we cannot
discover that any representation of the investment com-
pany, by act or word, justified Partridge in proceeding in
reliance that the investment company would see him paid
out of the loan. The investment company was free in the
beginning to pay the money to the mortgagor without re-
gard to its use by him, and it could not be deprived of that
privilege nor have imposed upon it the duty of seeing the

money applied to any particular purpose, in the absence of some contract of the investment company to that effect, or of conduct on its part justifiably leading another to rely upon its doing so. This record discloses neither such contract nor such conduct.

Wahlstrom & Berglund claim a personal judgment against the investment company of $200, on the ground that Leavenworth gave them an order on the investment company for that amount. The evidence is uncontradicted that the investment company persistently refused to accept this order. Although it had funds in its hands payable on the loan, no duty was imposed upon it in favor at least of a stranger of accepting and paying to such stranger an order drawn upon the fund. The mortgagor may have a right of action against the investment company for refusing to accept this bill, but having refused to accept it, there was no contract between the investment company and the payee giving the latter a right of action thereon.

The Hussey & Day Company and Wahlstrom & Berglund both ask personal judgments against Leavenworth. It appeared beyond doubt that McIntire, the nominal purchaser of the property, was financially irresponsible; that he was an employe of Leavenworth; that he took title and made the contracts solely as a matter of convenience at the request of and for the benefit of Leavenworth; that he never had or expected to have any beneficial interest; that Leavenworth resorted to this scheme for the purpose of avoiding personal responsibility; that he represented to the Hussey & Day Company at least that McIntire was a man of means and amply responsible; that such representations were false, were known by Leavenworth to be false; that they were made for the purpose of deceiving the Hussey & Day Company; that the Hussey & Day Company relied thereon and were misled thereby. The Hussey & Day Company pleaded these facts and asked for judgment against Leavenworth and not against McIntire.

50

The plaintiff sought a deficiency judgment against Leavenworth for similar reasons. Leavenworth demurred to the petition on the ground of misjoinder of causes of action. This demurrer was sustained, and the plaintiff elected to proceed against the other parties. This ruling disposed of the plaintiff's claim in this action against Leavenworth.

The answers and cross-petitions of the Hussey & Day Company and Wahlstrom & Berglund were not filed until long after the answer day as fixed by the summons issued upon the petition. The record does not disclose that any summons or notice issued on either of the cross-petitions, or that Leavenworth ever appeared thereto, so that, without regard to the merits of these appellants' claims for personal relief against Leavenworth, the court had no jurisdiction to grant such relief. (*Arnold v. Badger Lumber Co*, 36 Neb., 841.) The decree of the district court is

AFFIRMED.