49   485<br>49   686

THOMAS CUMMINGS, APPELLEE, V. BENJAMIN EMSLIE ET AL., APPELLEES, IMPLEADED WITH JOHN G. WILLIS, APPELLANT.

FILED OCTOBER 22, 1896.  No. 6769.

Mechanics' Liens: MORTGAGES: PRIORITIES. A mortgagee who encourages the improvement of the mortgaged property by an agreement to subordinate his lien to the cost thereof, will, as to persons furnishing labor and material for use therein upon the faith of his promise, be deemed a promoter of such improvement, and their liens for labor and material so furnished will be entitled to priority over his mortgage. (Bohn Mfg. Co. v. Kountze, 30 Neb., 719.)

APPEAL from the district court of Douglas county. Heard below before FERGUSON, J.

*John W. Lytle*, for appellant.

*Smith & Sheean, W. M. Cowherd, Silas Cobb, Curtis & Shields, Donovan & Evans, George M. O'Brien,* and *W. T. Nelson, contra.*

POST, C. J.

This action was brought by the appellee, Thomas Cummings, to foreclose an alleged mechanic's lien upon lot 19, in block 2, Idlewild addition to the city of Omaha, the defendants therein being Benjamin Emslie, the owner of the title to the property described, Dan Burr, George Gilbert, Benjamin Ames, the Phœnix Foundry Company, Wyatt Bullard Lumber Company, John J. Rounds, Edward Barrick, Wearne Brothers, John Swisher, and Joseph Haines, who claim mechanics' liens thereon, and John G. Willis, whose interest is that of a mortgagee. The latter filed a cross-bill setting up his mortgage for $3,237, which bears date of January 1, 1891, and praying for an accounting and decree of foreclosure, to which Burr, Gilbert, Rounds, and the Wyatt Bullard Lumber Company filed answers, in all of which it is alleged that on or about May 1, 1891, the said Willis entered into a verbal agreement with his co-defendant Emslie, whereby the latter agreed to erect upon the mortgaged premises a two-story brick building, and whereby "the said Willis promised and agreed to take a first mortgage upon the said premises for the sum of $500, and to subject the balance of his claim against the said Emslie to all the claims for work, labor, and material furnished to the said Emslie by any and all persons whomsoever for the erection of the said brick building." It is further alleged by the defendants named that they were advised by Emslie of said agreement, and that the work, labor, and material claimed for was furnished pursuant to contract with the latter in the construction of the building thus provided for, and upon the faith of the agreement above mentioned. Issue was joined by a general denial of the allegations of said an-

swers, and a hearing had, resulting in a decree for Willis in the amount of his note and mortgage, of which the sum of $1,000 is declared to be a first lien upon the mortgaged premises and the balance of $1,673.93 subordinated to the liens of his contesting co-defendants, and from which an appeal is by the former prosecuted to this court.

The only question presented by this appeal is whether Willis was, in a legal sense, a promoter of the building in question, so as to give the liens of laborers and material men contributing thereto priority over the lien of the mortgage. Gilbert, one of the contesting defendants, referring to an account rendered to Emslie for brick and labor employed in the construction of said building, testified as follows:

He [Emslie] said it was all right and told me if I would go with him to Mr. Willis I would get my $50.

Q. Did he ever pay you anything upon that work that you performed there?

A. Well, he and I went over to Mr. Willis.

Q. Very well, you may state when, and the circumstances connected with the payment of it.

A. I asked him for $100 and he said that if I would go over with him to Mr. Willis he could get it for me from Mr. Willis. I went over and Mr. Willis paid me $50 with the understanding that he would pay me $50 more the following Saturday provided I would go on and finish up the walls of the second story. I agreed to do so. The Saturday came, but he never paid me the second $50. * * *

Q. Did you ever have a conversation with Mr. Willis with reference to his subjecting his mortgage to these claims or to a mortgage for the payment of these claims?

A. I had a conversation with both Mr. Willis and Mr. Emslie to the effect that he had to take a second mortgage and release his first mortgage to enable Emslie to get a loan and that the loan was to be big enough so that he could pay him $1,000 on his mortgage and still have

enough left to build a building and that would leave about $500, and that Mr. Willis said he had to do it to save himself and help Emslie too.

Emslie was, it is shown, engaged with the knowledge and consent of Willis in an effort to effect a loan in the manner and for the purpose alleged. Referring to that subject the defendant Burr testified:

Q. What conversation did you have with Mr. Willis before going to Mr. Dale about the loan?

A. The substance of it was this, that he had an arrangement that he would take a part of his claim second to these material claims, or take a second mortgage—second to the mortgage that would be necessary to pay these material claims, but as he told me the exact amount had not been agreed upon. * * *

Q. Was there anything said between you and Mr. Willis as to whether or not the claims for material and labor should be paid out of the amount of a new loan?

A. Only this, that he told me if I went on and finished the contract that I would get my pay, that he would see that I would get my pay. * * *

Q. He was to have the balance out of the loan that was being made after your claim and other claims for labor and material were paid?

A. That is the idea I got of it.

Q. From the conversation with him?

A. Yes sir.

Willis' testimony contains an explicit denial of the alleged agreement, while the statements of Emslie bearing upon that subject are, to say the least, vague and unsatisfactory, although he assured each of the appellees that Willis had agreed to accept in lieu of his first mortgage, $1,000 in cash and a second mortgage which should be subject to the amount of claims for labor and material. The evidence, we think, fairly warrants the finding of the district court, that Willis was a promoter of the building described, and that as such he empowered Emslie, the mortgagor, to contract with appellees for the labor and

Missouri P. R. Co. v. Geist.

material furnished by them with the understanding that his claim in excess of $1,000 should be subordinate to their liens. The case is, therefore, within the principle recognized by this court in *Bohn Mfg. Co. v. Kountze*, 30 Neb., 719; *Millsap v. Ball*, 30 Neb., 728; *Pickens v. Plattsmouth Investment Co.*, 37 Neb., 277, and *Holmes v. Hutchins*, 38 Neb., 601.

DECREE AFFIRMED.