MILTON ROGERS ET AL. V. CENTRAL LOAN & TRUST COMPANY ET AL., APPELLANTS, AND WILLIAM R. HOMAN ET AL., APPELLEES.

FILED NOVEMBER 18, 1896. No. 6954.

1. **Mechanics' Liens:** MORTGAGES: PRIORITIES. Where a party agreed, in consideration of real property being placed in the hands of his agent, that the rents and profits therefrom arising were to be collected and paid out as stipulated to certain holders of liens on such property, among whom was the aforesaid party to said agreement, such agreement will be enforced according to its terms, though thereby the otherwise existing rights of said party are modified or impaired.

2. ———: ———: ———. The mere fact that a loan company, as a condition upon which it would make a loan for the erection of buildings on real property offered as security, required that the contemplated improvements should be conformably to plans submitted with the application for such loan, did not, for the amount paid by it out of the loan on a mortgage paramount to the liens of all parties concerned, subject the company to a direct liability to the holders of mechanics' liens created by reason of such improvements.

3. **Review.** On appeal to this court, relief can only be obtained by such parties as are appellants.

APPEAL from the district court of Douglas county. Heard below before FERGUSON, J.

*Wharton & Baird,* for appellants.

*Kennedy & Learned, Warren Switzler, Isaac Adams, W. H. De France, J. Q. Burgner, Parke Godwin, B. F. Thomas,*

*Will H. Thompson, Elmer E. Thomas, George W. Shields, Curtis & Shields, Lysle I. Abbott, George E. Turkington, Jr., Tiffany & Vinsonhaler, George E. Pritchett, H. L. Day,* and *Montgomery, Charlton & Hall,* for appellees.

RYAN, C.

There was in the district court of Douglas county a decree in this case, whereby numerous holders of mechanics' liens were adjudged first in priority as against the Central Loan & Trust Company and Clarence A. Starr with respect to certain real property in Omaha. In argument it was suggested that one of these preferred lien-holders was not entitled to relief, because there had been no compliance with the statute for the establishment of a lien by the original claimant before he assigned to the Nebraska Coal & Lime Company, the present claimant. This argument is urged by one who has not appealed, and, therefore, must be disregarded.

Americus Overton, one of the above preferred lienors, was allowed only $319. The amount for which his claim was filed was a balance of $895.77. We have not been able to find any testimony or proofs that would justify the allowance of but $319, and in this search we have not been assisted by any suggestions of counsel for either of the other parties. The real property was owned by W. R. Homan. The contract for the erection of six buildings was made by Mr. Homan with the firm of R. Stevens & Son. One of the members of this firm, W. J. Stevens, testified that several bids were made on the lumber and that Mr. Overton's was the lowest; that a fair price for the bill of lumber furnished by Mr. Overton was $1,100 or $1,200, and that the firm of R. Stevens & Co. received the said lumber at the buildings on the lots whereon they were erected. There had been paid $213.73, which amount, deducted from $1,100, left $886.27, for which, according to this testimony, Mr. Overton was entitled to a lien, instead of $319. We are aware that Mr. Nelson, a carpenter, estimated the amount of lumber which would

be required for the erection of the six buildings like those erected by R. Stevens & Son, and that his estimate was 55,622 feet; but there was no attempt to show the value of the lumber upon which he figured; and this essential being omitted, we cannot say that the testimony of Mr. Nelson was at variance with that of Mr. Stevens. This is not a matter wherein the evidence is merely conflicting, but it is one wherein the proof is sufficient and is practically uncontradicted. There should be established a lien in favor of Mr. Overton for the sum of $886.27, with interest as provided by law. With this correction the mechanics' liens, in view of the fact that the right to neither of them is questioned by any appellant, must be for the several amounts fixed by the district court. The remaining questions arise between the lienors on the one side and the Central Loan & Trust Company and Clarence A. Starr on the other, and these we shall now consider.

Clarence A. Starr was the agent of the Central Loan & Trust Company in making a loan of $16,000 to Mr. Homan, secured by three mortgages on the naked land upon which, afterward, the six houses in question in this case were erected. As Mr. Starr acted for the loan company, his status and that of the company are the same with reference to the propositions hereinafter discussed. There exists no reason, therefore, for separately naming each of these parties in every instance, and only where necessary shall we refer to Mr. Starr by name. In the answer and cross-petition of the Central Loan & Trust Company there were descriptions of the mortgages on the property above described and of the three notes, of which each of two was for $5,000 and the third was for $5,600. In addition to the above three there was a note for $400, making the aggregate amount of $16,000 secured by the mortgages of William R. Homan and Agatha Homan, his wife, to the loan and trust company. Following the averments of the making of the above notes, and the execution and recording of the mortgages

securing the same, there was this language: "This defendant further represents that at the time said Homan applied for the loan, and at the time of the execution of the said notes and mortgages, the said premises were subject to a mortgage for the principal sum of $8,200, bearing date February 6, 1891, and recorded in book 161, at page 129, of mortgages in the register of deeds' office of Douglas county, Nebraska, executed by the said William R. and Agatha H. Homan to one Eugene C. Bates; that for the purpose of protecting and securing this defendant in case the said Homan should fail to complete said buildings in accordance with the said agreement, and it should become necessary for this defendant to advance any additional sums of money for the completion thereof, this defendant paid the said Bates the amount of principal and interest due on said mortgage, and caused the same to be assigned to the defendant Clarence A. Starr and held by said Starr in trust for the protection of this defendant as aforesaid in case said Homan should make default or fail in the completion of the said buildings in accordance with the said agreement." In the answer and cross-petition of Clarence A. Starr he alleged that the Bates mortgage was paid by the loan and trust company out of the proceeds of the amount borrowed of it by Mr. Homan. This qualification of the language of the answer and cross-petition of the loan and trust company was received and acted upon as an established fact throughout, so that it may be assumed, for the purposes of this case, that with a part of the proceeds of the loan of $16,000 the Bates mortgage was paid off by the loan and trust company.

Immediately following the language above quoted from the answer and cross-petition of the loan and trust company there were these averments by the said company: "This defendant further represents that in consideration of this defendant's advancing to the said Homan a part of the proceeds of the said loan prior to the completion of the said buildings, the said William R. and

Agatha H. Homan executed and delivered to this defend-
ant their contract bearing date of July 28, 1891, whereby
said William R. and Agatha H. Homan agreed, among
other things, to leave in the hands of this defendant at
all times a sum of money sufficient to complete said build-
ings, and that no liens should be allowed to be filed
against said premises, and that the mortgages aforesaid
should be additional security in any amount that this
defendant might be required to pay in addition to the
proceeds of said loan in case of the failure of said Homan
to comply with said agreement." Following the above
quotations there were in the answer and cross-petition
of the loan and trust company averments that Homan
failed to complete the buildings in accordance with his
agreement, and that the contractors, material furnishers,
and mechanics, about August 1, 1891, refused to proceed
with the erection of the buildings on account of the fail-
ure of the said Homan to furnish the means wherewith
they might be paid; that thereupon, in consideration of
previous advances made and those which afterward
would be required, William R. Homan and his wife con-
veyed the premises whereon were the unfinished build-
ings to Clarence A. Starr, and, contemporaneously with
making said conveyance, the said William R. Homan
assigned to said Starr all rents, issues, and profits of
said premises, it being understood and agreed that Starr
should enter into possession and complete the buildings
in accordance with the agreement between Homan and
the Central Loan & Trust Company. It was further
averred by said company that on or about August 1, 1891,
Starr entered into possession of the premises and pur-
chased the necessary materials and employed the neces-
sary mechanics, who completed the erection of the build-
ings upon which work had been suspended at the cost
of $9,752.06; that at the time Starr took charge of said
buildings there was unexpended of the $16,000 borrowed
the sum of $3,979.50; and that after deducting the last
named sum of $3,979.50 from the $9,752.06 expended by

Starr in completing the buildings there was still due the company for which Starr was acting a balance of $5,772.56. This company, in its answer and cross-petition, alleged that it had received from Starr of the rents of the completed buildings the sum of $3,006.03, which, deducted from the above sum of $5,772.56, left still due the company the sum of $2,766.53, for the security of which sum the company alleged that it held the Bates mortgage. It was further alleged by this company that it had assigned the two notes of $5,000 each and the note for $5,600 to individuals named who were not made parties to this action, and that under its contract of assignment the said company had guarantied the payment of principal and interest on said three notes. It was averred by the company in this connection that it had been compelled to pay various sums of interest on its said guaranty, and, to preserve the mortgage security, had been compelled to pay various described sums of taxes, and that it held one note of $400 and another of $960, secured by mortgages on the aforesaid real property, each of which sums was due it, and, under the terms of the mortgages, they were subject to foreclosure. There was a prayer in this answer and cross-petition for an accounting of the amount of principal, interest moneys advanced and interest thereon, and expenses due the aforesaid company; that in default of payment the mortgaged premises might be sold, and the proceeds of such sale be applied in payment of the amount found due said company; and "that the defendant Clarence A. Starr be ordered and decreed by the court to retain possession of said premises and collect the rents and profits thereof, and apply the same upon indebtedness which may be found due this defendant, during the pendency of this suit and until the sale of said premises and confirmation thereof," etc. From this condition of the answer and cross-petition of the Central Loan & Trust Company it is evident that if Mr. Starr has remained in possession of the premises referred to, he has done so as

trustee under the terms of the written agreement between Mr. Homan and himself, acting for the Central Loan & Trust Company, and that, therefore, in any event, this cause must be remanded for the accounting thereby necessitated, and for which the company has prayed. This agreement is on many accounts an important factor in this investigation, and to it we shall now turn our attention. Having recited the facts leading up to and requiring the execution of it, it closed with the following provisions: "Now, therefore, this agreement is to evidence the fact that the said deed and assignment of even date herewith are not intended as absolute conveyances, but for the purposes of security only, to-wit, first, to secure the completion of the uncompleted buildings being erected on a portion of said premises, and the payment of all claims and liens for material and labor entering into the construction of said buildings which might be enforced against said premises; the sum of money now remaining in the hands of the Central Loan & Trust Company on said mortgage loan to be first applied in the completion of said buildings and the payment of said claims; second, to secure the payment of all taxes or assessments due or to become due against said premises, except assessments not delinquent prior to the fulfillment of the purposes of the said conveyance; to make all necessary repairs on the buildings on said premises, and to pay all interest which may mature upon the mortgages held by said Central Loan & Trust Company, as well as the principal of said mortgages, should the same become due and payable prior to the fulfillment of the purposes of said conveyance and this agreement; also, to pay all necessary insurance premiums for the purposes of keeping the improvements on said premises and property insured; third, to protect the Central Loan & Trust Company against all liens and incumbrances which are or might be prior in point of time or right to the mortgages of said company." It may be true that the Central Loan & Trust Company originally held the first claim against the real property

mortgaged, under the rule laid down in *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207; but that question we are not now considering. By virtue of the provisions above quoted the money in the hands of the Central Loan & Trust Company at the date of this agreement, and such rents as should afterward be collected, were to be applied in payment of all claims and liens for material and labor entering into the construction of said buildings which might be enforced against said buildings, and it is therefore proper to decree that the liens thus provided for shall take precedence of the right of the Central Loan & Trust Company to withhold the balance of the loan still remaining in its possession, and that the laborers and material-men are entitled to exhaust the fund derived from rents before the said company shall be permitted out of them to reimburse itself in respect to interest, taxes, or assessments paid by it. This subordination of its own right to those of others was by virtue of the terms of the agreement referred to, and, of course, is circumscribed thereby.

There is another branch of this case, which for the most part is thus described by one of the findings of the district court: "The court further finds that William R. Homan, one of the defendants herein, applied to one C. A. Starr, a co-defendant and general manager of the defendant, the Central Loan & Trust Company, for a loan on the premises described in the first finding hereof, for the purpose of erecting buildings on said property, and that said William R. Homan submitted to said C. A. Starr and the Central Loan & Trust Company plans for said buildings, and that said loan was made for the purpose of enabling said defendant Homan to erect buildings in accordance with the plans submitted to the Central Loan & Trust Company on said premises, and that said loan to Homan was a building loan, and that one of the conditions of said loan required Homan to erect buildings in accordance with the plans submitted to the Central Loan & Trust Company, the said plans being for the

buildings which were erected upon said premises, and the fact that said loan was a building loan was known to defendants Archer Eke and R. Stevens & Son and their co-defendant subcontractors, and that said Eke and Stevens & Son entered into their contracts with said Homan, relying upon said sums of money so loaned to said Homan by said Central Loan & Trust Company for the erection of said buildings, and that said Stevens & Son waived all rights to file a lien on said premises against said Homan and said Central Loan & Trust Company, upon the faith and credit of said sums of money so loaned to said Homan being applied in the payment for labor and material going into said buildings, and that the said Archer Eke waived his right to a lien against the defendant, the Central Loan & Trust Company, upon the faith and in consideration of said money so loaned being applied and paid upon the labor and material used in the construction and erection of the buildings on the said premises in controversy. And the court finds that the said loan and trust company knew that the defendants Eke and Stevens & Son and their co-defendants, the subcontractors, depended upon said sums of money so loaned to said William R. Homan being used for the payment of the labor and material used in the erection of and construction of said buildings, and that they, the said Eke and R. Stevens & Son, released their respective rights to mechanics' liens as above in consideration thereof. The court further finds that at the time of the negotiation of the said loan from said Central Loan & Trust Company by William R. Homan there were no buildings upon said premises in dispute, and that said loan was procured by said Homan for the sole purpose of erecting the buildings that were thereafter erected thereon, and in the construction of which the said mechanics' lienors and the said Archer Eke and Stevens & Son, and each of them, furnished said labor and material, and the Central Loan & Trust Company was cognizant that this was the sole purpose for which

said loan was made, and that said Central Loan & Trust Company diverted from the said purpose and failed to apply in payment of the said labor and material so used in construction and erection of the buildings on said premises the sum of $8,415, and that the same was applied for other purposes. The court further finds that the mechanics' lienors herein, and each and all of them, and the said defendants Archer Eke and R. Stevens & Son, were entitled to have said sum of $8,415 applied to the payment of labor and material furnished for said buildings, and that said Central Loan & Trust Company is liable to the mechanics' lienors herein, and each and all of them, and to the defendants Eke and H. L. Day, assignee of R. Stevens & Son, for said sum of $8,415 so diverted." In conformity with the above finding, H. L. Day was properly denied relief, because of the waiver of the right of lien above noted. There was a judgment rendered in favor of each of the holders of a valid mechanic's or material-man's lien, for the amount of his claim, against C. A. Starr and the Central Loan & Trust Company, in so far as he was entitled thereto, upon the apportionment of the above $8,415. This latter aggregate sum was what was paid on the Bates mortgage of $8,200, which originally was paramount to the claims of all parties to this action. The appellees strenuously urge that this judgment was justified by the rule announced in *Bohn Mfg. Co. v. Kountze,* 30 Neb., 719. There are some facts stated in the above finding which possibly might properly be stated in a petition for equitable relief in a proper case, but in this there were no such facts pleaded by either of the appellees. Their pleadings were framed only with a view to the foreclosure of a mechanic's lien. It admits of very grave doubt whether, under such a condition of the pleadings, in any event there could properly have been granted the relief which was administered by the rendition of a personal judgment against C. A. Starr and the Central Loan & Trust Company, respectively. In *Bohn Mfg. Co. v. Kountze, supra,* this court went

no further than to hold that a vendor of real property, who, in the contract of sale, required the vendee to construct buildings of a certain description on the property sold, and himself retained control of the funds necessary for the erection contemplated and required that his assent should accompany orders for payments, so far constituted himself a promoter of the proposed improvements that his lien should be declared inferior to the claims of mechanics and material-men who contributed to the erection proposed. The case at bar was decided before attention had been called to the distinguishing features above noted, as they have been in *Pickens v. Plattsmouth Investment Co.*, 37 Neb., 272, *Holmes v. Hutchins*, 38 Neb., 601, *Sheely v. Fulton*, 38 Neb., 691, *Hoagland v. Lowe*, 39 Neb., 412, *Patrick Land Co. v. Leavenworth*, 42 Neb., 715, and *Cummings v. Emslie*, 49 Neb., 485. In view of these repeated expressions of the views of this court, it is unnecessary to enter into details for the purpose of showing that the case of *Bohn Mfg. Co. v. Kountze* does not sustain the proposition that Starr and the loan and trust company were liable to each of the lienors, as was held in this case, and the several personal judgments against C. A. Starr and the Central Loan & Trust Company are therefore reversed.

It is proper, and perhaps necessary, to say that while we have considered the rights of various parties with reference to the application of the balance retained by the Central Loan & Trust Company, and the disposition to be made of the rents which have been or may be collected by Starr, it has not been deemed necessary to discuss the rights of the Central Loan & Trust Company to a foreclosure against the real property improved for the amount of its payment of taxes and interest as it accrued. By the arrangement whereby Starr was put in possession this company did not qualify its right to a lien on the said real property, and as the order in which priorities should be decreed in a case of this kind was clearly stated in *Henry & Coatsworth Co. v. Fisherdick*,

*supra,* there exists no necessity that by a restatement the same ground should be covered.   To the extent hereinbefore indicated, the judgment of the district court is reversed, and this cause is remanded for further proceedings in accordance with the views already expressed.

REVERSED AND REMANDED.